IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK BURTON | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| MARTIN HORN, GERALD L. ROZUM, | : | No. 09-2435 |
| THE DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF PHILADELPHIA and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF PHILADELPHIA | : | |

MARCH 27, 2013

Petitioner Frederick Burton ("Burton"), a prisoner serving a life sentence at the State Correctional Institution in Somerset, Pennsylvania, filed a counseled petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254. United States Magistrate Judge Elizabeth T. Hey filed a Report and Recommendation ("R&R") finding his petition untimely. Burton filed objections.

Following a hearing held on December 15, 2011, this court granted Burton leave to amend his habeas corpus petition to include additional evidence. The court also remanded Burton's petition to Judge Hey for a supplemental R&R. Judge Hey determined that the new evidence had no bearing on her conclusion that Burton's petition is untimely. Burton filed objections. For the reasons set forth below, the court will adopt Judge Hey's R&R and supplemental R&R, overrule Burton's objections and dismiss his petition as untimely.

I. BACKGROUND

A. Factual and Procedural History

In 1972, after a jury trial before the Honorable Peter F. Hagan, Burton was convicted for first degree murder, assault with intent to murder and conspiracy. N.T., 12/7/72, at 550-51. The charges arose from the murder of Francis Von Colln and the assault on James Harrington, both

1

Fairmount Park Police members. The following facts were developed at trial:

> On August 29, 1970, at or about 8:30 p.m., Officers Harrington and Kenner of the Fairmount Park Police in Philadelphia were turning into the Cobbs Creek Guardhouse of the 93rd Police District when they saw an unidentified Negro man gesturing at them to stop. The man then fired into the face of Officer Harrington, seriously injuring his lower jaw. . . . Officer Kenner was soon joined by two additional police officers and they called for additional support. Officer McConomy, who occupied a guardhouse at the 96th District Station, received the call for assistance and radioed Officer Von Colln at the Cobbs Creek Guardhouse to find out what the trouble was. Von Colln replied, "I am not sure." Just then a second call came over the radio and Officer McConomy told Von Colln he had a second assistance call. To this Von Colln replied, "Oh yeah?" Officer McConomy then heard several shots through the receiver and asked Von Colln what was happening, but he received no reply. Officer Von Colln died of gunshot wounds.
> At the scene of the shooting of Officer Harrington, police arrested Hugh Sinclair Williams, who, just before the arrest, dropped a bag containing a .32 revolver, fifteen cartridges, and a fragmentation grenade. . . .
> On the basis of information apparently given to them by Marie Williams, wife of Hugh Sinclair Williams, police concluded that the crime was the work of a gang known as "The Revolutionaries," which included her husband . . . and appellant Frederick Burton. [Burton] was arrested, and after a warrant was obtained, a search of his home disclosed a number of spent cartridges, a 9-millimeter shell, a fragmentation grenade similar to those found at the murder scene and a 24 by 20 drawing of a police sergeant on his knees with a black militant holding a gun to his head, with the caption, "This Now." . . .
> To prove that [Burton] was a member of the "corrupt confederation" responsible for the killing of Officer Von Colln, the Commonwealth presented the testimony of Marie Williams . . . . [At trial,] Mrs. Williams testified that her husband, [Burton], [and others] had met in her home about once a week during the four months prior to the shooting of Officer Von Colln. At these meetings, the group, including [Burton], discussed how they, in the words of Mrs. Williams, would "eliminate the 'pigs'" in order to get police pressure off the blacks. She further testified that about a week before the murder of Officer Von Colln, the group, including [Burton], discussed their plans to blow up a police station . . . .

*Commonwealth v. Burton*, 330 A.2d 833, 834-36 (Pa. 1975). Burton was sentenced to life imprisonment for the murder conviction. N.T., 12/12/73, at 6-8. The Pennsylvania Supreme Court affirmed the conviction and sentence on direct appeal. *Burton*, 330 A.2d 833.

On September 30, 1981, Burton filed a counseled petition pursuant to the Pennsylvania

2

Post-Conviction Hearing Act ("PCHA"), the precursor to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq*. The court denied his petition. *Commonwealth v. Burton*, No. 1004 (Phila. C.C.P. Jan. 9, 1984). The Pennsylvania Superior Court affirmed the denial of Burton's petition, *Commonwealth v. Burton*, No. 584 Phila. 1984 (Pa. Super. Apr. 26, 1985), and the Pennsylvania Supreme Court denied allowance of appeal, *Commonwealth v. Burton*, 895 E.D. Allocatur Dkt. 1985 (Pa. Mar. 7, 1986).

In 1987, Burton filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania. The petition was transferred to the Honorable Louis Bechtle in this District. Burton argued his trial counsel was ineffective for failing to: 1) seek suppression of certain evidence; 2) object to testimony of the decedent's widow; and 3) object to prejudicial remarks in the prosecutor's closing statement. The court denied Burton's petition on the merits. *Burton v. Petsock*, No. 88-102 (E.D. Pa. Nov. 4, 1988).

Burton filed a PCRA petition on November 14, 1991. The court dismissed the petition because the claims had been litigated or waived. *Commonwealth v. Burton*, No. 1004 (Phila. C.C.P. Dec. 5, 1991). Burton filed a second habeas petition in 1999. Judge Bechtle dismissed it as successive. *Burton v. Frank*, No. 99-333 (E.D. Pa. Mar. 5, 1999).

On September 21, 2004, Burton filed a *pro se* PCRA petition arguing he was denied access to the documents from Marie Williams's immunity hearing. Burton's counsel filed an amended petition challenging the prosecutor's use of peremptory challenges in jury selection and the Commonwealth's failure to disclose evidence undermining Ms. Williams's trial testimony and two statements she gave to police shortly after the shootings implicating her husband and the other defendants. This evidence included:

1) Ms. Williams's first statement to police on August 30, 1970, not mentioning Burton;

2) a letter Ms. Williams wrote to the District Attorney's office one month before her immunity hearing that stated police forced her to make untrue statements implicating her husband and the other defendants and denied that her husband and the others were involved in the crimes;

3) the transcript from Ms. Williams's immunity hearing, when her counsel questioned the police detective about the coercive nature of Ms. Williams's police interrogation;[1] and

4) the transcript from Burton's third preliminary hearing, when Ms. Williams testified her statements to police were coerced.[2]

*Commonwealth v. Burton*, No. 12-1004 (Phila. C.C.P. Sept. 28, 2005). Burton asserts that the immunity hearing transcript and Ms. Williams's letter to the District Attorney's office were not made available to him until August 2003.[3] He also asserts the prosecutor retrieved the defense copy of the third preliminary hearing transcript after Burton's trial and kept the only known copy until an investigator obtained it for Burton on August 22, 2005. The Honorable Sandy L.V. Byrd dismissed Burton's PCRA petition as untimely. *Commonwealth v. Burton*, Nos. 1004, 1005 (Phila. C.C.P. Oct. 16, 2006).

---

[1] The Commonwealth held a closed immunity hearing for Ms. Williams on November 12-13, 1970, after which she was granted immunity from prosecution. Ms. Williams did not testify at the hearing.

[2] At Burton's first two preliminary hearings, Ms. Williams asserted her Fifth Amendment right against self-incrimination and refused to testify. After receiving immunity, Ms. Williams testified at the third preliminary hearing on November 17, 1970.

[3] Although Burton and his counsel attended the preliminary hearings, they did not attend Ms. Williams's immunity hearing. Burton claims the immunity hearing documents were either "confidential or filed under seal," so he could not access them. Burton explains that, at some time prior to August 2003, the documents became "co-mingled with Mr. Burton's [court] file," and in August 2003, the documents were mailed to Burton. Petr's Mem. of Law at 9 n.3.

On appeal to the Superior Court, Burton argued that an exception to the PCRA statute of limitations should apply.[4] The Superior Court, finding Burton was not entitled to an exception, affirmed denial of his petition. *Commonwealth v. Burton*, 2519 EDA 2006 (Pa. Super. Ct. Oct. 24, 2007). The Supreme Court denied Burton's petition for allowance of appeal. *Commonwealth v. Burton*, 686 EAL 2007 (Pa. Oct. 8, 2008).

On May 28, 2009, Burton filed this counseled petition for a writ of habeas corpus.[5] This court dismissed the petition as successive, but transferred it to the Third Circuit Court of Appeals to determine whether the merits could be addressed. *Burton v. Horn*, 2009 WL 3335223 (E.D. Pa. Oct. 13, 2009). The Court of Appeals permitted Burton to file his successive petition in the district court.[6] This court referred the petition to Magistrate Judge Elizabeth Hey for an R&R.

In his federal habeas corpus petition, Burton argues that the prosecutor:

1) failed to disclose to the defense exculpatory evidence, including Ms. Williams's letter to the prosecution and transcripts from the immunity and third preliminary hearings;

2) suborned perjury by permitting Ms. Williams to testify falsely at trial;

3) failed to correct testimony he knew or had reason to know was false; and

4) made false and misleading statements in his closing argument.

Burton also asserts that:

---

[4] Under the PCRA, a petition must be filed within one year from the date the judgment becomes final, unless the petitioner demonstrates: 1) the failure to raise the claim was the result of governmental interference; 2) the facts upon which the case is predicated were unknown to petitioner and could not have been discovered through the exercise of due diligence; or 3) the right was recently recognized by the United States Supreme Court or the Pennsylvania Supreme Court. 42 Pa. Cons. Stat. § 9545(b).

[5] Burton's petition was reassigned because Judge Bechtle retired.

[6] The Court of Appeals found that applying the AEDPA gatekeeping provisions to Burton's petition would be unduly retroactive. This decision relates to the district court's jurisdiction to review Burton's petition, not the timeliness of Burton's petition.

5

> 1) new evidence demonstrates that it is more likely than not that no reasonable juror would have convicted him;
>
> 2) in light of the Commonwealth's withholding evidence, the state court's failure to grant discovery improperly denied Burton post-conviction relief;
>
> 3) prior counsel were ineffective for failing to raise and/or preserve the claims presented in this petition; and
>
> 4) the cumulative effect of these errors entitles him to relief.

The government responds that Burton's petition is untimely, the claims are procedurally defaulted and the petition is an abuse of the writ.

### B. R&R and Objections

Judge Hey recommended Burton's petition be dismissed as untimely. She found: 1) Burton's petition was filed after the federal habeas limitations period; 2) statutory tolling does not apply; and 3) Burton is not entitled to equitable tolling. Burton timely filed twenty-five objections challenging all of Judge Hey's findings. He asserts that his petition is not untimely because the statute of limitations did not start to run until he obtained the third preliminary hearing transcript in 2005. He also argues his time for filing this federal habeas petition should have been tolled while he attempted to exhaust state remedies.

### C. Supplemental R&R and Objections

After Judge Hey issued the first R&R, Burton sought leave to amend his habeas petition to include a November 22, 2011 expert report by a forensic handwriting analyst. The report authenticates the signature of Marie Williams on the letter she sent to the District Attorney's office to recant her statements to police. Following a hearing, this court granted Burton's motion

to amend, requested briefing on the significance of the handwriting report to the timeliness of Burton's petition and remanded the petition to Judge Hey for a supplemental R&R. After reviewing the additional evidence and briefs, Judge Hey determined the report had no bearing on the timeliness of Burton's petition. Burton filed objections.

## II. DISCUSSION

The court must review *de novo* those portions of the R&R to which Burton specifically has objected. 28 U.S.C. § 636(b)(1)(C).

### A. Start Date for Burton's Petition

Burton objects to Judge Hey's findings that: 1) the limitations period for his habeas petition began to run in August 2003 at the latest; and 2) Burton's petition was untimely filed.

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), generally requires a petitioner to file his or her habeas petition within one year from final judgment. There is a one-year grace period for petitioners whose convictions became final before April 23, 1996. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998). Burton's conviction became final in 1975, over two decades before the effective date of AEDPA. His deadline for filing was April 23, 1997. He filed the instant petition on May 28, 2009.

The court may use a later start date for the one-year limitations period in certain circumstances. Under § 2244(d)(1)(B), the one-year period runs from "the date on which [an] impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed." Under § 2244(d)(1)(D), the limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

7

*1. Impediments to Filing*

Burton claims, under § 2244(d)(1)(B), that the court should use August 22, 2005, the date when he obtained the third preliminary hearing transcript, as an alternative start date. Ms. Williams testified at Burton's third preliminary hearing that her statements implicating Burton had been coerced. Burton claims the prosecutor created an impediment to filing when he took back the defense copy of the transcript after Burton's trial and kept the only known copy until an investigator obtained it for Burton in 2005. This argument is meritless. Burton and his counsel were present at the third preliminary hearing. Burton cannot claim the prosecutor created an impediment to filing when he attended the hearing and heard the testimony at issue. Burton also admits he could have obtained a transcript "sometime prior to 2003." Obj. to R&R at 13.

Burton next argues he relied on a letter from the PCRA court regarding an earlier PCRA petition. In February 1990, Burton received a letter stating that his claims must be supported by the "complete notes of testimony from the trial."[7] The court is troubled by this letter. Burton reasonably could have concluded, and did conclude, that he needed to attach the third preliminary hearing transcript to file his PCRA petition. This reasonable belief delayed the filing of Burton's PCRA petition and also delayed the filing of this federal habeas petition. The PCRA court's letter impeded Burton's filing under § 2244(d)(1)(B).

This impediment was removed in 2003, when Burton concedes he could have obtained the third preliminary hearing transcript, even though he actually obtained the transcript on

---

[7] The letter stated in full:
> I will remind you that <u>you</u> have the burden of proof under the Post Conviction Relief Act and without support for your claims, they will be dismissed. For instance, if you refer to some error during the course of trial, such a claim must be supported by the complete notes of testimony from trial.

*Commonwealth v. Burton*, No. 70-12-1004 (Phila. C.C.P.), 2005 PCRA Appx. Ex. 7.

August 22, 2005. Accordingly, the one-year statute of limitations began to run in 2003. Burton did not file his PCRA petition until September 21, 2004, and he waited another seven months after the conclusion of his PCRA appeal (October 8, 2008) to bring this habeas petition (May 28, 2009). Even if the court uses 2003 as a start date, Burton did not file the instant petition within the one-year limitations period.

### 2. *Newly Discovered Evidence*

Burton's argument can also be read as one under § 2244(d)(1)(D): the court should use August 22, 2005, when Burton obtained the third preliminary hearing transcript, as a start date, because he could not have discovered the factual predicate of his claims until then. Section 2244(d)(1)(D) allows for a later start date only if "vital facts" underlying the petitioner's claims could not have been known at the earlier date. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004). Burton's claims of prosecutorial misconduct and actual innocence rely on Ms. Williams's letter to the prosecution and the testimony at the immunity and third preliminary hearings. Burton and his counsel were present at the third preliminary hearing, and he concedes he could have obtained a transcript of that hearing "sometime prior to 2003." Obj. to R&R at 13. Burton also admits he obtained Ms. Williams's letter and an immunity hearing transcript in August 2003. The latest possible start under § 2244(d)(1)(D) is August 2003.

Using August 2003 as Burton's start date does not make his habeas petition timely. Burton filed his *pro se* PCRA petition on September 21, 2004, over a year after his "discovery" of the immunity hearing materials. The court cannot review Burton's habeas petition, filed in May 2009, unless statutory or equitable tolling applies.

### B. Statutory Tolling

Burton argues that the court should exclude the time during which his 2004 PCRA petition was pending from the limitations period for his federal habeas petition. AEDPA allows for statutory tolling, under § 2244(d)(2), during the period a "properly filed application for State post-conviction or other collateral review" is pending. A petition for collateral review that has been dismissed by the state courts as untimely is not considered "properly filed." *Pace v. DiGuglielmo*, 544 U.S. 408, 415 (2008).

Burton's 2004 PCRA petition was dismissed by the state courts as untimely, so his petition was not "properly filed."[8] *See Burton*, 936 A.2d 521, 524-25 (Pa. Super. Ct. 2007). Burton is not entitled to statutory tolling.[9] His objection to the R&R will be overruled.

### C. Equitable Tolling

Burton also argues that his petition should be equitably tolled. "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair." *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998). A petitioner seeking equitable tolling must show that: 1) he or she has diligently pursued his or her rights; and 2) an extraordinary circumstance prevented timely filing. *Holland v. Florida*, 130 S.Ct. 2549 (2010). The diligence required for tolling is "reasonable diligence," not the "maximum feasible diligence." *Id.* at 2563. The petitioner must establish diligence "throughout the period he seeks to

---

[8] Burton points out that his 2004 PCRA petition was filed prior to the *Pace* decision, and he contends pre-*Pace* case law supports statutory tolling in this instance. Obj. to R&R at 17 (*citing Artuz v. Bennett*, 531 U.S. 4 (2000); *Lambert v. Blackwell*, 2003 WL 1718511 (E.D. Pa. April 1, 2003); *Brown v. Shannon*, 322 F.3d 768 (E.D. Pa. Mar. 17, 2003)). This circuit determined well before *Pace* that an untimely PCRA petition is not "properly filed" for statutory tolling purposes. *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003); *Fahy v. Horn*, 240 F.3d 239 (3d Cir. 2001); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). The cases cited by Burton are inapposite.

[9] Even if the court were to toll the period during which Burton's PCRA petition was pending, his petition would remain untimely. Absent equitable tolling, the limitations period began to run in August 2003 at the latest, and Burton did not file his PCRA petition until September 21, 2004, more than one year later. By the time he filed his PCRA petition, the one-year limitations period for his federal habeas petition had expired.

toll." *Warren v. Gavin*, 219 F.3d 111, 113 (2d Cir. 2000).

Burton knew of Ms. Williams's inconsistent testimony at least from the time of the third preliminary hearing he attended, but he did not file the instant habeas petition until May 2009. Burton concedes he could have obtained a transcript of the third preliminary hearing prior to 2003, but he did not obtain it until August 22, 2005. Although Burton received the immunity hearing transcript and Ms. Williams's letter to the prosecution in August 2003, he did not file his 2004 PCRA petition until 13 months later. He then waited seven months after the Pennsylvania Supreme Court ruled on his 2004 PCRA petition to file the instant habeas petition. Burton was not diligent in pursuing the claims he raises in this petition.

Both diligence and an extraordinary circumstance are required for equitable tolling. Since Burton was not diligent, it is unnecessary to decide whether any extraordinary circumstance interfered with the filing of this habeas petition. *See, e.g.*, *Pace*, 544 U.S. at 418 (declining to determine whether extraordinary circumstance prevented timely filing because petitioner did not establish requisite diligence); *Horning v. Lavan*, 197 Fed. Appx. 90, 93 (3d Cir. 2006) (same). Burton's objections will be overruled.

### D. The Expert Handwriting Report

Finally, Burton objects to Judge Hey's conclusion in the supplemental R&R that his petition should be dismissed as untimely despite the forensic handwriting report Burton added to his habeas petition. The November 22, 2011 expert report authenticates the signature on the letter Marie Williams sent to the District Attorney's office. In the letter, Ms. Williams stated that police forced her to make untrue statements implicating her husband and the other defendants, and she denied that her husband and the others were involved in the crimes. Following a hearing

11

held on December 15, 2011, the court granted Burton leave to amend his petition to include the expert report and asked him to brief the significance of the report to the timeliness of his petition.

In his supplemental brief, Burton does not explain how the expert report makes his petition timely. Instead, he argues again that the letter itself entitles him to equitable tolling and that it establishes his actual innocence. Burton also asserts more generally that "[a]ll of the equities in the present case weigh in favor of substantive review of the merits of Mr. Burton's petition by the Court." Petr's Supplemental Br. at 2.

The expert report does not alter any of the conclusions reached above. The authenticity of Ms. Williams's letter is irrelevant to the timeliness of Burton's habeas petition.[10] It also does not establish that Burton was diligent or that his petition should be equitably tolled.[11] Burton's objections to the supplemental R&R will be overruled.

## III. CONCLUSION

Judge Hey's R&R and supplemental R&R will be adopted, Burton's objections will be overruled and his petition will be dismissed as untimely. An appropriate order follows.

---

[10] The court already considered and rejected the argument that Burton's "discovery" of Ms. Williams's letter along with the immunity hearing transcript in August 2003 entitles him to a later start date for the federal habeas limitations period. The expert handwriting report authenticates the signature on Ms. Williams's letter. The court never questioned the authenticity of the letter in its analysis, so the expert handwriting report does not change the court's conclusion.

[11] As explained above, the court cannot apply equitable tolling to Burton's petition because he was not diligent in pursuing his claims. The authenticity of Ms. Williams's letter does not affect Burton's diligence.